# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KARAMO B. KABA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Case No. 01-150-WDS-PMF |
| | ) |
| WARDEN STEPP, et al., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is a motion for judgment on the pleadings (Doc. No. 208). Also pending are motions for summary judgment (Doc. Nos. 207, 210, 211, 213). The motions are opposed (Doc. Nos. 226, 227, 228, 229 230). Replies are on file (Doc. Nos. 231, 232, 233).

Plaintiff brought this *Bivens* action in order to recover damages for injuries suffered from a February 23, 2001, assault. He claims the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when they failed to protect him from harm. During the relevant period, plaintiff was confined at USP-Marion, where he was assigned to a cell in the housing area known as B Unit. Defendant Stepp was the warden; defendant Benson was a correctional captain, and defendant Yonkman was a special investigative agent. During part of the time, defendant Laird was plaintiff's case manager.

## Motion for Judgment on the Pleadings

Defendant Stepp seeks judgment in his favor on the pleadings. He points to allegations in paragraphs 34, 35, and 36 of the Second Amended Complaint, claiming that they show that his

conduct did not meet the Eighth Amendment's "deliberate indifference" standard. He also seeks a finding in his favor on the affirmative defense of qualified immunity.

Plaintiff responds that the allegations in the Second Amended Complaint show that Stepp knew plaintiff faced a substantial risk of harm from other inmates, which would support a finding of deliberate indifference. He further maintains that the qualified immunity defense should fail because the deliberate indifference standard was clearly established when the Supreme Court decided *Farmer v. Brennan*, 511 U.S. 825 (1994).

Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. However, Constitutional liability does not result every time one inmate hurts another. The Eighth Amendment is violated only when the prison official involved has a sufficiently culpable state of mind. He must either intentionally subject the inmate to a substantial risk of serious harm or act or fail to act with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Sufficient culpability exists if the official is aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and that inference is drawn. *Id*. at 847. Ordinary negligence, or the failure to take reasonable steps to alleviate a risk that should have been perceived, is not a basis for liability. *Id.* In "failure to protect" cases, '[a] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety.' *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991).

Judgment on the pleadings may be entered when it appears beyond doubt that the plaintiff cannot prove any facts to support his claim for relief. *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007). Well-pleaded allegations are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004).

In support of his argument, defendant Stepp highlights allegations that he received information about defendant Laird's conduct. Second, he points to allegations that plaintiff was injured after a prison guard unlocked the door to plaintiff's cell and facilitated a physical attack by hostile inmates. In defendant Stepp's view, these allegations do not suggest that he actually knew that plaintiff faced a risk of being attacked by hostile inmates who were acting with staff assistance.

This motion lacks merit. Viewing the allegations in plaintiff's favor, it is not beyond doubt that plaintiff cannot prove facts supporting his Eighth Amendment claim. Taken as true, the allegations demonstrate that defendant Stepp was warned that defendant Laird, acting as plaintiff's case manager, encouraged inmates in B Unit to target plaintiff for a hostile attack. Proof of facts consistent with those allegations would permit a finding that defendant Stepp knew of a specific threat to plaintiff's safety. Those allegations are sufficient to suggest that plaintiff is able to satisfy the objective element of his claim. *Id*. The allegations further show that defendant Stepp did not remove plaintiff from the general inmate population. Facts proved in support of that allegation could demonstrate the subjective element of plaintiff's claim: that defendant Stepp responded to the threat of harm with deliberate indifference. Plaintiff is not required to allege that defendant Stepp had precise knowledge of the specific harm that ultimately occurred. *Riccardo v. Rausch*, 375 F.3d 521, 534 (7th Cir. 2004).

**Motions for Summary Judgment**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The facts presented

are construed in the light most favorable to the non-moving party, and all reasonable and justifiable inferences are drawn in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To survive a summary judgment motion, the opposing party must set forth specific facts showing that there is a genuine issue for trial. *Vanasco v. Nat'l-Louis Univ.*, 137 F.3d 962, 965 (7th Cir.1998).

All defendants seek judgment in their favor on the affirmative defense of qualified immunity or on the merits of plaintiff's Eighth Amendment claim.

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Anderson v. Creighton*, 483 U.S. 635 (1987). The inquiry is whether a reasonable prison employee would understand that his conduct violated the plaintiff's constitutional rights. In order to resolve this argument, the Court first decides whether the alleged conduct violated a Constitutional right, taking the facts in the light most favorable to plaintiff. If so, the Court considers whether the right was clearly established in the light of the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Many facts are in dispute. Accepting plaintiff's version of the facts and taking all reasonable inferences in plaintiff's favor, he was confined in B Unit along with a number of other inmates. USP-Marion was a maximum security penitentiary. At the relevant time, one particular inmate housed on B Unit had a well-known reputation for extreme violence as well as the ability to manipulate inmate behavior, due in part to his leadership position in a violent gang. Inmates in B Unit have freedom of movement within the range and in and out of cells.

On February 23, 2001, a prison guard unlocked the door to plaintiff's cell. A group of hostile inmates entered and physically assaulted plaintiff, causing serious injury. After one prison guard ordered the hostile inmates to leave plaintiff's cell, another prison guard known as Huckelberry entered the cell and stuck plaintiff in the face with a stick, causing further injury.

Prior to the assault, defendant Laird made derogatory comments about plaintiff in the presence of B Unit inmates. Laird's comments, considered in light of the surrounding circumstances, created a serious risk that plaintiff would be assaulted and injured by hostile inmates living in B Unit. Plaintiff described defendant Laird's behavior and his circumstances to the other defendants and asked each of them to protect him from impending harm. Defendant Stepp initiated an investigation and evaluated information. Defendants Benson and Yonkman also performed investigations and evaluated information pertaining to plaintiff's circumstances. These defendants were confronted with information that potentially led them to understand and subjectively believe that there was a substantial risk to plaintiff's safety from hostile inmates so long as he remained in B Unit. Defendant Stepp gave defendant Laird a different job assignment at a prison camp adjoining the penitentiary. None of the defendants removed plaintiff from B Unit, arranged for plaintiff to be separated from the general inmate population, or recommended that plaintiff be confined in a protective form of custody known as administrative detention.

A. <u>Defendant Stepp</u>. Defendant Stepp argues that the evidence would not support a finding that plaintiff faced a risk of substantial harm in February, 2001. The argument overlooks proper inferences that a jury could logically draw from plaintiff's version of the events. The materials submitted show that plaintiff can introduce evidence that defendant Stepp knew about defendant Laird's conduct and gathered other information, from which he understood that the

circumstances created a substantial risk of physical retaliation from hostile inmates while plaintiff remained in B Unit. *See Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001).

Defendant Stepp also argues that the evidence would not support a finding that his response to the risk amounts to deliberate indifference. A rational jury might conclude that Stepp's response was adequate; however, plaintiff's version of the facts could permit a finding that defendant Stepp responded to the risk in a manner that was woefully inadequate. Although defendant Stepp initiated an investigation, reviewed information, and modified defendant Laird's work assignment, he also ignored plaintiff's multiple requests for protection and made no effort to place plaintiff on administrative detention or otherwise separate plaintiff from B Unit inmates. The evidence could support a finding that defendant Stepp's actions were not reasonably designed to ensure plaintiff's safety from a physical assault by hostile inmates.

Defendant Stepp points to the manner in which the assault was carried out, suggesting that there is no nexus between his decisions and plaintiff's injury. In order to recover damages, plaintiff must prove that defendant Stepp's omissions were a proximate cause of his injuries. A careful review of the evidence reveals no facts that could rationally support a finding that the injury inflicted by the guard known as Huckelberry had any connection to or was fairly traceable to defendant Stepp's decisions. However, the materials submitted describe a series of events from which a jury might reasonably infer a proximate, causal connection between defendant Stepp's omissions and the injuries inflicted by hostile inmates living in B Unit. Viewing the facts in plaintiff's favor, the Court cannot conclude that the connection between these events is too remote or that another intervening act was the sole proximate cause of plaintiff's injuries.

B.	<u>Defendant Laird</u>.  Defendant Laird seeks qualified immunity, claiming he was removed from USP-Marion on December 28, 2000.[1]  The evidence presented could support a finding that defendant Laird's conduct amounts to a deliberate effort to place plaintiff in harm's way.

Defendant Laird also points to the manner in which the assault was carried out.  The evidence does not permit any inference of a connection between defendant Laird's conduct and the injury inflicted by the prison guard known as Huckelberry.  However, the materials describe a series of events from which a reasonably jury could infer a proximate, causal connection between defendant Laird and the injuries inflicted by hostile inmates.

C.	<u>Defendant Benson</u>.  Defendant Benson argues that he is immune from an award of damages because the evidence shows that he did not know or infer that plaintiff had a credible fear of injury.  He points to evidence showing that defendant Laird was removed from B Unit.  This argument overlooks plaintiff's version of the facts, which shows Benson's knowledge that plaintiff faced a substantial risk of harm so long as he remained in B Unit.

Defendant Benson also points to the manner in which the assault was carried out.  Viewing the evidence in plaintiff's favor, a reasonable jury could find a causal connection between Benson's omissions and the injuries inflicted by hostile inmates.

Defendant Benson also points to evidence that he was on administrative leave at the time plaintiff was injured.  Because plaintiff's theory of liability is based on omissions over a period of time, the Court is not persuaded that the evidence must place defendant Benson in the institution at the time of the assault.

---

[1] Laird relys on defendant Stepp's deposition testimony (Doc. No. 213, p. 3). The date of Laird's reassignment cannot be gleaned from this evidence.

In his reply brief, defendant Benson objects to some of the testimony and exhibits (Doc. No. 233). Because sur-reply briefs are not allowed by Local Rule, plaintiff did not have an opportunity to respond to the objections. SDIL-LR 7.1(c). The challenged evidence is not a crucial part of plaintiff's case against defendant Benson. The objections are not resolved at this time.

        D.        <u>Defendant Yonkman</u>. Defendant Yonkman asserts qualified immunity, claiming that he had no reason to know or believe that plaintiff faced any risk of harm. Yonkman maintains that he believed the risk abated after defendant Laird was reassigned and certain witnesses were interviewed. He further suggests that plaintiff's arguments are based on innuendo. This argument overlooks plaintiff's version of events, including plaintiff's own testimony and information gleaned from other sources, all of which could rationally support a finding that Yonkman actually knew about a serious risk that plaintiff would be assaulted and harmed by hostile inmates so long as he remained in B Unit.

Defendant Yonkman also argues that there is no causal connection between his omissions and the assault. As noted above, the evidence submitted could lead to a finding that there was a proximate relationship between Yonkman's failure to recommend or arrange for administrative detention and the injuries inflicted by hostile B Unit inmates.

Defendant Yonkman argues that no evidence would support a finding that he responded to plaintiff's safety concerns with deliberate indifference. He points to testimony that he had no authority to put an inmate in administrative detention. The argument overlooks Yonkman's testimony that he would put an inmate in administrative detention under certain circumstances. That testimony suggests that defendant Yonkman had the ability to protect plaintiff from harm by recommending or arranging administrative detention.

In his reply brief, defendant Yonkman objects to some of the testimony and exhibits (Doc. No. 235). Because sur-reply briefs are not allowed by Local Rule, plaintiff did not have an opportunity to respond to these objections. SDIL-LR 7.1(c). The challenged evidence is not a crucial aspect of plaintiff's case against defendant Yonkman. The objections are not resolved at this time.

E. Some of the defendants argue that the legal standard governing *Bivens* liability was not well established in 2001. That argument lacks merit. It was well-established in 2001 that the Eighth Amendment's deliberate indifference standard governs a claim based on failure to protect an inmate from physical harm inflicted by hostile inmates. *Farmer v. Brennan*, 511 U.S. at 828.

IT IS RECOMMENDED that defendant Stepp's motion for judgment on the pleadings (Doc. No. 208) be DENIED.

IT IS FURTHER RECOMMENDED that the motions for summary judgment filed by defendants Stepp, Laird, Yonkman, and Benson (Doc. Nos. 207, 210, 211, 213) be GRANTED in part and DENIED in part. These defendants are immune from an award of damages for the injuries inflicted by a prison guard known as Huckelberry.

**SUBMITTED:** July 7, 2008 .

*s/Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**